## Turner v. First National Bank of Kentucky.

(Decided February 11, 1927.)

(Rehearing Denied, with Modification, April 29, 1927.)

### Appeal from Harlan Circuit Court.

1. Bill and Notes.—Where defendants, in suit on note, alleged that note had been procured by fraud, burden rested on defendants to prove fraud alleged

2. Banks and Banking.—Good or bad faith of seller in making statements as to value of bank stock sold, for which note sued on was given, had to be measured by facts as they existed at that time and not by value as affected by subsequent events.

LEE & SNYDER for appellants.

SAMPSON & SAMPSON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The National Bank of Kentucky, which we shall refer to by name, recovered a judgment for $5,000 against H. B. Turner and 10 others. Of these defendants, H. B. Turner and W. C. Turner alone superseded this judgment and have prosecuted this appeal. E. T. Kearns and the remaining defendants have paid the judgment recovered by the National Bank of Kentucky, and it has assigned the judgment to them.

In 1919, there was organized at Evarts, Ky., the Black Mountain Bank. Shortly thereafter, W. C. Turner became a stockholder and director, and later, H. B. Turner did the same. They were brothers, and then lived in and were engaged in business at Evarts. Some time later, E. T. Kearns and others, who lived at Lynch, acquired 104 shares of the stock of the Black Mountain Bank. Later Kearns became president of it. The Black

Mountain Bank depended for its depositors very largely upon the coal industry and the people engaged therein. That industry underwent a great depression in 1921 and the years following. The Black Mountain Bank suffered as a result of that depression. On February 19, 1924, a special meeting of its directors was had at the request of the deputy banking commissioner. They found that they had bad notes and deficits amounting to $10,000, the note of the Harlan Co-operative Coal Company for $19,-500; that the bank was overdrawn more than $10,000; and that over $7,000 of cash letters were unpaid. The deputy banking commissioner was threatening to close the bank, but he approved a plan under which, if accepted, he was willing for the bank to go ahead. Under that plan the capital stock of the bank was to be reduced from $25,000 to $15,000, the directors were to secure the $19,500 note of the Harlan Co-operative Coal Company, to secure this overdraft of more than $10,000, and to execute a note to the Bank of Lynch to take care of the cash letters. This was done. The deputy banking commissioner and all of them then regarded the bank as solvent, and the reduced stock as worth par and the old stock as worth 60 cents on the $1. About that time, and perhaps as a part of this plan, it was decided to change the name of the bank, and it was changed to the Evarts State Bank.

E. T. Kearns and a number associated with him did not want to go into the new arrangement, and offered to sell the 104 shares of stock held by them for 50 cents on the $1. These 104 shares of stock were purchased by H. B. and W. C. Turner, and in payment therefor they executed to E. T. Kearns their note for $5,200. Kearns was representing himself and others associated with him in the ownership of this 104 shares, and, as soon as he got the note, he and they sold it and indorsed it to the National Bank of Kentucky. He and his associates divided among themselves the money arising from the sale of the note and the losses sustained by the sale of their stock at 50 cents on the $1. This note was renewed twice. $200 of the principal was paid, and the note sued on was thus only $5,000. In the early part of 1925, the Evarts State Bank failed, and it is now in process of liquidation. The Turners refused to make further payment on the $5,000 note, and the National Bank of Kentucky filed suit against them. The defendants H. B. and W. C. Turner, in their answer alleged the note had been procured by fraud, and sought to defeat the notes in the

hands of the National Bank of Kentucky, and further sought judgment against E. T. Kearns and others for the sum of $9,230, which the Turners claimed they had had to pay on account of this bank transaction. A part of that was paid to the banking commissioner upon their double liability as owners of this bank stock, and part of it represented money they had to pay on account of having guaranteed some of these notes. The court required them to assume the burden and that is the first thing of which they are complaining. There is no merit in that contention, for it is well settled that the burden rests upon the party against whom the judgment would go if no proof of any kind were offered. This suit was based on this note, and, in the absence of any proof of any kind, the court would have had to give judgment against the Turners. They sought to show that this note was procured by fraud, and that E. T. Kearns, at the time he sold this 104 shares of stock to them, the face value of which was $10,400, had stated that he regarded it as worth 60 cents on the $1, or $6,240, and had stated that he regarded the stock after the capital was reduced from $25,000 to $15,000 as worth par. From this record we would say that all of them so regarded this stock at that time. No one then knew the extent to which the depression in the coal industry would go, or the ruin that would follow. Those figures and estimates of the value of this stock were correct then. Subsequent developments and later occurrences have been such that this stock ultimately proved to be without value, but such loss of value was the result of subsequent happenings. A. may sell to B. a lot of timber and take his note therefor. The timber may thereafter be so damaged by fire as to be worthless, but that does not enable B. to defeat A., when he endeavors to collect this note. It is true the assets of this bank then were such that, as the result of subsequent happenings, they became worthless; but it is also true that this timber was then combustible, and as a result of that and the subsequent fire it became worthless. That does not prove the timber had no value when sold; neither do the subsequent happenings to the assets of this bank establish that this stock was worthless then. There is nothing in this record to show this stock was then worthless. The good or bad faith of Kearns in making these statements is to be measured by the facts as they existed then, and the value of his stock under the conditions as they then were, not by the value of this stock as it was

thereafter affected by the happening of subsequent events. There is nothing in this record to indicate that the statement of Kearns then made was untrue. Hence the court properly instructed the jury to return a verdict against the defendants in both the original action and the cross action.

The judgment is affirmed.